Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Tel.: (650) 858-6000
Fax: (650) 858-6100

Joseph J. Mueller (*pro hac vice* forthcoming)
Andrew J. Danford (*pro hac vice*
forthcoming)
joseph.mueller@wilmerhale.com
andrew.danford@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6000
Fax: (617) 526-5000

*Attorneys for Plaintiff Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| APPLE INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>PINEY WOODS MOBILITY LLC,<br><br>                    Defendant. | CASE NO.   5:26-cv-5219<br><br>**APPLE INC.'S COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENTS NOS. 8,712,441, 9,031,581, 9,185,522, 9,253,616, 9,615,204, AND 9,736,618**<br><br>**JURY TRIAL DEMANDED** |

CASE NO.                                                                                                          COMPLAINT

Plaintiff Apple Inc. ("Apple"), by and through its undersigned counsel, files this Complaint for Declaratory Judgment of Noninfringement of U.S. Patent Nos. 8,712,441 ("'441 patent," attached as **Exhibit 1**), 9,031,581 ("'581 patent," attached as **Exhibit 2)**, 9,185,522 ("'522 patent," attached as **Exhibit 3**), 9,253,616 ("'616 patent," attached as **Exhibit 4**), 9,615,204 ("'204 patent," attached as **Exhibit 5**), and 9,736,618 ("'618 patent," attached as **Exhibit 6**) (together the "Patents-in-Suit") against Defendant Piney Woods Mobility LLC ("Piney Woods"), and in support of its Complaint alleges as follows.

## NATURE OF ACTION

1.　　This is an action for a declaratory judgment of noninfringement of the Patents-in-Suit against Piney Woods arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the patent laws of the United States, Title 35 of the United States Code.

2.　　Since its founding fifty years ago, Apple has been a pioneer in the design of consumer electronics products.  Apple's innovations have led to the introduction of iconic products that have profoundly influenced modern life.  Apple has been awarded thousands of patents by the United States Patent and Trademark Office ("USPTO"), which protect the technologies underlying Apple's groundbreaking inventions.  Apple requests the relief sought by its complaint because Piney Woods claims that certain Apple products and/or services infringe the Patents-in-Suit.

3.　　On February 26, 2026, Piney Woods filed a complaint against Apple in the U.S. District Court for the Western District of Texas accusing Apple of infringing the Patents-in-Suit. Complaint, Dkt. 1, *Piney Woods Mobility LLC v. Apple Inc.*, Case No. 7:26-cv-00068 (W.D. Tex. Feb. 13, 2026).  In the complaint, Piney Woods asserted that it "is the sole and exclusive owner, by assignment," of the Patents-in-Suit and alleged that "[u]pon information and belief . . . [Apple] makes, sells, advertises, offers for sale, uses, or otherwise provides, at a minimum, hardware, firmware, and software applications . . . that enable communication with and among customer devices, which provide location determination, transmissions to Apple servers, server-side storage and processing, authorization and sharing controls, map display, and alert

generation, covered by the Patents-in-Suit." *Id.* ¶ 23.  Piney Woods accused the following Apple products of infringement:

- iPhone 16 / 16e / 16 Pro / 16 Pro Max / 16 Plus
- iPhone 15 / 15 Pro / 15 Pro Max / 15 Plus
- iPhone 14 / 14 Pro / 14 Pro Max / 14 Plus
- iPhone 13 / 13 Pro / 13 Pro Max / 13 mini
- iPhone 12 / 12 Pro / 12 Pro Max / 12 mini
- iPhone 11 / 11 Pro / 11 Pro Max
- iPhone X / XS / XS Max / XR
- iPhone SE (3rd gen, 2022)
- iPhone SE (2nd gen, 2020)
- iPhone 8 / 8 Plus; iPhone 7 / 7 Plus; iPhone 6s / 6s Plus
- iPad Pro (M5) 11-inch & 13-inch
- iPad Pro (M4) 11-inch & 13-inch
- iPad Pro (6th gen, 2022) 11-inch & 12.9-inch
- iPad Pro (5th gen, 2021) 11-inch & 12.9-inch
- iPad Pro (4th gen, 2020) 12.9-inch
- Apple Watch Series 6 (2020) — GPS and GPS + Cellular models
- Apple Watch SE (1st gen) (2020) — GPS and GPS + Cellular
- Apple Watch Series 7 (2021) — GPS and GPS + Cellular
- Apple Watch Series 8 (2022) — GPS and GPS + Cellular
- Apple Watch SE (2nd gen) (2022) — GPS and GPS + Cellular
- Apple Watch Ultra (2022) — GPS + Cellular only
- Apple Watch Series 9 (2023) — GPS and GPS + Cellular
- Apple Watch Ultra 2 (2023) — GPS + Cellular
- Apple Watch Series 10 (2024) — GPS and GPS + Cellular
- Apple Watch Series 11 (2025) — GPS and GPS + Cellular
- Apple Watch SE (3rd gen) (2025) — GPS and GPS + Cellular

CASE NO.                                    - 2 -                                    COMPLAINT

- Apple Watch Ultra 3 (2025) — GPS + Cellular
- MacBook Air (M1, 2020) — and all later models (M2 2022, M3 2024, M4 2025, 13-inch & 15-inch variants)
- MacBook Pro (13-inch M1, 2020) — and all later (14-inch & 16-inch M1 Pro/Max 2021, M2 series 2023, M3 series 2023–2024, M4/M5 series 2025+)
- Mac mini (M1, 2020) — and all later (M2 2023, M4 2024+)
- iMac (24-inch M1, 2021) — and all later (M3 2023, M4 2025+)
- Mac Studio (M1 Max/Ultra, 2022) — and all later (M2 series 2023, M3/M4 series 2025+)
- Mac Pro (M2 Ultra, 2023) — and later models (e.g., 2025+ updates)
- AirPods Pro (1st gen) (2019).
- AirPods Max (2020).
- AirPods (3rd gen) (2021).
- AirPods Pro (2nd gen) (2022 Lightning, 2023 USB-C refresh) — H2 chip.
- AirPods (4th gen) (2024, standard non-ANC version).
- AirPods 4 with Active Noise Cancellation (2024).
- AirPods Pro (3rd gen) (2025).
- AirTag (1st gen) (released April 30, 2021) — Model number A2187.

(collectively, "Accused Apple Products"). *Id.*

4. The deadline for Piney Woods to serve its complaint on Apple under Federal Rule of Civil Procedure 4(m) was May 27, 2026. Piney Woods failed to timely serve within the required 90 days. Apple promptly filed a motion to dismiss for failure to serve under Federal Rule of Civil Procedure 12(b)(5). *See* Apple Inc.'s Motion to Dismiss, Dkt. 6, *Piney Woods Mobility LLC v. Apple Inc.*, Case No. 7:26-cv-00068 (W.D. Tex. June 1, 2026).

5. About two weeks before filing its complaint against Apple, Piney Woods filed patent infringement lawsuits against AT&T Inc., AT&T Enterprises, LLC, AT&T Mobility LLC, AT&T Mobility II LLC, and AT&T Services, Inc. (together, "AT&T"); Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (together, "Samsung"); T-Mobile USA, Inc.

("T-Mobile"); and Verizon Communications, Inc. and Cellco Partnership *d/b/a* Verizon Wireless (together, "Verizon") alleging that each defendant infringes some or all of the Patents-in-Suit. *Piney Woods Mobility LLC v. AT&T Inc. et al.*, Case No. 2:26-cv-00121 (E.D. Tex. Feb. 13, 2026); *Piney Woods Mobility LLC v. Samsung Electronics Co. Ltd et al.*, Case No. 2:26-cv-00122 (E.D. Tex. Feb. 13, 2026); *Piney Woods Mobility LLC v. T-Mobile USA Inc.*, Case No. 2:26-cv-00123 (E.D. Tex. Feb. 13, 2026); *Piney Woods Mobility LLC v. Verizon Communications, Inc. et al.*, Case No. 2:26-cv-00124 (E.D. Tex. Feb. 13, 2026). Piney Woods alleged in the T-Mobile, Verizon, and AT&T cases (collectively, "Carrier Cases") that the defendants infringed the Patents-in-Suit by using, selling, offering for sale, and/or importing into the United States, *inter alia*, Apple iPhone and iPad products. *See* Dkt. 1 ¶ 23, *Piney Woods Mobility LLC v. T-Mobile USA Inc.*, Case No. 2:26-cv-00123 (E.D. Tex. Feb. 13, 2026); Dkt. 1 ¶ 28, *Piney Woods Mobility LLC v. AT&T Inc. et al.*, Case No. 2:26-cv-00121 (E.D. Tex. Feb. 13, 2026); Dkt. 1 ¶ 24, *Piney Woods Mobility LLC v. Verizon Communications, Inc. et al.*, Case No. 2:26-cv-00124 (E.D. Tex. Feb. 13, 2026). Piney Woods has served each defendant in the Carrier Cases, which have since been consolidated and proceeded into motion practice for the defendants' motions to dismiss.

6. Based on Piney Woods's allegations of infringement by Apple and Apple products, both in its complaint against Apple in the Western District of Texas and in the Carrier Cases, an actual and justiciable controversy exists between Apple and Piney Woods.

7. As explained below, Apple and the Accused Apple Products do not infringe any of the Patents-in-Suit. Because Piney Woods has not prosecuted the lawsuit that it filed against Apple, Apple brings this declaratory judgment action to resolve any allegations of infringement by Apple and Apple products and/or services of the Patents-in-Suit.

## PARTIES

8. Apple is a public corporation organized under the laws of the State of California, with its principal place of business at One Apple Park Way, Cupertino, CA 95014.

9.      Defendant Piney Woods Mobility LLC has claimed that it is a limited liability company organized and existing under the laws of the State of Texas, with a principal address at 1400 W. Southwest Loop 323, Suite 50 #2090, Tyler, TX 75701.

**JURISDICTION AND VENUE**

10.     This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and under the patent laws of the United States, Title 35 of the United States Code.

11.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.  Jurisdiction is also proper under 28 U.S.C. § 1332 because Apple and Piney Woods are citizens of different states, and the value of the controversy exceeds $75,000.

12.     Pursuant to 28 U.S.C. § 2201, this Court can provide the declaratory relief sought in Apple's Complaint because an actual case or controversy exists between Apple and Piney Woods.  An actual case or controversy exists at least because Apple does not infringe and has not infringed any claim of the Patents-in-Suit, and Piney Woods has accused Apple's products and services of infringing the Patents-in-Suit in both a complaint against Apple and in the Carrier Cases.

13.     This Court has personal jurisdiction over Piney Woods because Piney Woods has engaged in actions in the Northern District of California ("NDCA") that have established sufficient minimum contacts with the District.  Further, the exercise of personal jurisdiction based on Piney Woods's contacts does not offend traditional notions of fairness and substantial justice.

14.     Piney Woods was formed on November 21, 2025 under the laws of the State of Texas with only one managing member, X One, Inc.  *See* **Exhibit 7** (Certificate of Formation for Piney Woods Mobility LLC).  Upon information and belief, X One, Inc. is a Delaware corporation with a principal place of business at 741 Kalthoff Common, Livermore, California 94550 (which is located in NDCA).  *See* **Exhibit 8** (Certificate of Incorporation of X One, Inc.); **Exhibit 9** (X One, Inc. Statement of Information Corporation, dated Aug. 20, 2025).

15.    Richard D. Haney, the sole named inventor of all Patents-in-Suit, is, upon information and belief, X One, Inc.'s co-founder, president, CTO, CFO, and CEO. *See* **Exhibit 9** at 1; https://www.xoneinc.com/about. Mr. Haney incorporated X One, Inc. and provided his mailing address at the time of incorporation as 4709 Michelle Way, Union City, CA 94587 (which is located in NDCA). *See* **Exhibit 8** at 1. Further, each patent identifies Mr. Haney's location to be Union City, California (which is located in NDCA). *See* **Exhibits 1-6**.

16.    X One, Inc. is the Applicant and Assignee for all six of the Patents-in-Suit. *See* **Exhibits 1-6**. Each patent identifies Union City, CA or Livermore, CA as X One, Inc.'s location; both cities are in Alameda County, California (which are located in NDCA). *Id.*

17.    X One, Inc. assigned the Patents-in-Suit to Piney Woods on November 24, 2025 (**Exhibit 10**) and filed a Corrective Assignment, providing a copy of the executed assignment document, to the USPTO on March 18, 2026 (**Exhibit 11**). Both the Assignment and Corrective Assignment identify Jose J. Picazo as the Correspondent for Piney Woods with an address of 741 Kalthoff Common, Livermore, California 94550, the same address as the principal place of business for X One, Inc. noted above (which is located in NDCA). *See* **Exhibit 10** at 1; **Exhibit 11** at 1; *see also* **Exhibit 9** at 1. Mr. Picazo signed the Assignment of Patents as "Managing Member" of Piney Woods. *See* **Exhibit 10** at 6. Upon information and belief, Mr. Picazo is also the Secretary of X One, Inc. and served as the CEO of X One, Inc. *See* **Exhibit 9** at 1; https://www.xoneinc.com/about.

18.    Thus, Piney Woods, through its agents and sole managing member, has operated and conducted business relating to Piney Woods and the Patents-in-Suit within the Northern District of California.

19.    A substantial portion of the research and development for the Accused Products occurred at Apple's headquarters in Cupertino, California (which is located in NDCA). Relevant financial and licensing documentation and personnel are also primarily located in Apple's Cupertino headquarters.

20.　　Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Apple's claim occurred in this District, and because Piney Woods is subject to personal jurisdiction here.

21.　　An immediate, real, and justiciable controversy exists between Apple and Piney Woods as to whether Apple is infringing or has infringed the Patents-in-Suit.

## DIVISIONAL ASSIGNMENT

22.　　This is an Intellectual Property Rights Action subject to assignment on a district-wide basis pursuant to Civil L.R. 3-2(c) and 3-5(b).

## FACTUAL ALLEGATIONS/BACKGROUND

### A. Apple Independently Developed the Accused Technology

23.　　Apple was founded in 1976 and is world-renowned for creating innovative products that people love. Apple produces those products through its significant investment in, and dedication to, research and development and product design.

24.　　Apple created the accused technologies. For example, Apple announced the first iPhone by 2007 and launched its first iPhone by June 2007. *See* https://www.apple.com/newsroom/2007/01/09Apple-Reinvents-the-Phone-with-iPhone/; https://www.verizon.com/articles/Smartphones/milestones-in-history-of-apple-iphone/. Apple announced the first iPad by 2010 and launched its first iPad by April 2010. *See* https://www.apple.com/newsroom/2010/01/27Apple-Launches-iPad/; https://www.ign.com/articles/all-ipad-release-dates-in-order. Apple announced the first AirPods by 2016 and launched the first AirPods by December 2016. *See* https://www.apple.com/newsroom/2016/09/apple-reinvents-the-wireless-headphones-with-airpods/; https://www.apple.com/newsroom/2016/12/apple-airpods-are-now-available/. Apple announced iCloud by 2011 and launched iCloud by October 2011. *See* https://www.apple.com/newsroom/2011/06/06Apple-Introduces-iCloud/; https://www.apple.com/newsroom/2011/10/04Apple-to-Launch-iCloud-on-October-12/. Apple first announced the "Find My iPhone" feature, a precursor to the Find My application, in June 2009 and made the feature free and available to iPhone, iPad, and iPod users as of November 2010. *See* https://www.macrumors.com/2009/06/08/iphone-os-3-0-launching-june-17th/; Shan Li, *Apple makes Find My iPhone service*

*free for iOS devices*, L.A. TIMES: TECHNOLOGY BLOG (Nov. 22, 2010), https://www.latimes.com /archives/blogs/technology-blog/story/2010-11-22/apple-makes-find-my-iphone-service-free-for-ios-devices.  Apple released the "Find My Friends" application, another precursor to the Find My application, in October 2011.  *See* https://www.macworld.com/article/214734/apple_releases_ find_my_friends_for_ios.html.  In June 2019, Apple announced that the "Find My iPhone" and the "Find My Friends" features would be merged into the Find My application.  *See* https://www.cnet.com/tech/mobile/find-my-friends-and-find-my-iphone-is-now-one-app-find-my/.

25.     Apple engineers who work on the accused technologies are based in Cupertino, California.

26.     Because documents about Apple's products and services, including technical documents and source code, are created and maintained by the employees working on those products and services, such documents are primarily created and maintained in Northern California.

**B.  Apple Does Not Infringe the Patents-in-Suit**

27.     The Patents-in-Suit are all expired.  The '441, '581, '522, and '616 patents expired on April 4, 2025.  Due to patent term adjustment, the '204 and '618 patents expired on August 14, 2025 and July 31, 2025, respectively.

28.     The Accused Apple Products do not directly or indirectly infringe any claim of the Patents-in-Suit, literally or under the doctrine of equivalents.

29.     No third party infringes any claim of the Patents-in-Suit by using the Accused Apple Products.  Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  The Accused Apple Products are not designed for use in any combination that infringes any claim of the Patents-in-Suit.  To the contrary, each has substantial uses that do not infringe any claim of the Patents-in-Suit.

## CLAIMS AND PRAYER FOR RELIEF

### FIRST COUNT

**(Declaration of Noninfringement of U.S. Patent No. 8,712,441)**

30.    Apple restates and incorporates by reference the allegations in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31.    Piney Woods claims to own all rights, title, and interest in the '441 patent. The '441 patent is titled "Methods and Systems for Temporarily Sharing Position Data Between Mobile-Device Users." The '441 patent issued on April 29, 2014 from U.S. Patent Application No. 13/861,373, filed on April 11, 2013. The '441 patent lists Richard D. Haney as the inventor and X One, Inc. as the initial, sole assignee. A true and correct copy of the '441 patent is attached hereto as Exhibit 1.

32.    Piney Woods has accused Apple of infringing claims 1, 3-6. 9-17, 20-24, and 27-33 of the '441 patent. Apple does not directly or indirectly infringe any claim of the '441 patent, either literally or under the doctrine of equivalents.

33.    For example, claim 1 of the '441 patent recites:

A method of sharing position data between a first device associated with a first user and a second device associated with a second user, the position data including first position data indicating a first location of the first device and second position data indicating a second location of the second device, the method comprising:

receiving, from the first device, a first request to set up a position-sharing relationship between the first and second users;

transmitting a second request to the second device, the second request inviting the second user to accept the position-sharing relationship;

receiving a message from the second device indicating acceptance of the position-sharing relationship;

establishing the position-sharing relationship responsive to the acceptance;

transmitting the first position data to the second device and the second position data to the first device;

receiving updated first position data from the first device and updated second position data from the second device; and

transmitting the updated first position data to the second device and the updated second position data to the first device;

wherein the second user is one of multiple buddies of the first user, each buddy being associated with a corresponding mobile device, including the second device, the method further comprising:

noting position data for each of the mobile devices, including the second position data;

calculating a center of gravity for the position data; and

displaying the position data for a subset of the buddies based on the center of gravity.

34.    Apple does not infringe claims 1, 3-6, 9-17, 20-24, and 27-33 of the '441 patent at least because the Accused Apple Products do not practice at least the limitations requiring:

- "receiving, from the first device, a first request to set up a position-sharing relationship between the first and second users" (claim 1)

- "transmitting a second request to the second device, the second request inviting the second user to accept the position-sharing relationship" (claim 1)

- "receiving a message from the second device indicating acceptance of the position-sharing relationship" (claim 1);

- "establishing the position-sharing relationship responsive to the acceptance" (claim 1);

- "transmitting the first position data to the second device and the second position data to the first device" (claim 1); and

- "wherein the second user is one of multiple buddies of the first user, each buddy being associated with a corresponding mobile device, including the second device" (claim 1).

For example, the Accused Apple Products do not establish a position-sharing relationship to share users' location information.  Instead, Apple products, including the Accused Apple Products, only share a user's location information with other users when the user elects to share, and sharing location information does not involve the acceptance of any request.  Location sharing in Find My is a one-way action.  *See, e.g.*, Apple, Share Your Location in Find My on

iPhone, iPhone User Guide, https://support.apple.com/guide/iphone/ share-your-location-iph01954dc44/26/ios/26 (last visited May 27, 2026) ("In the With field, type the name of a friend you want to share your location with . . . Tap Send and choose how long you want to share your location.").

35.     No third party infringes any claim of the '441 patent by using the Accused Apple Products.  Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  Apple had no knowledge of the '441 patent, nor any knowledge of alleged infringement of the '441 patent by the Accused Apple Products before the patent expired.  For at least the reasons explained above, the Accused Apple Products and the use of the Accused Apple Products do not directly infringe the '441 patent.  The Accused Apple Products are not designed for use in any combination which infringes any claim of the '441 patent.  To the contrary, each has substantial uses that do not infringe any claim of the '441 patent and are not accused by Piney Woods of infringing the '441 patent.  For example, the Accused Apple Products can be used for phone calls, texts, browsing the Internet, streaming content, tracking health, listening to audio, and more.

36.     Thus, there exists an actual controversy between Apple and Piney Woods with respect to Apple's alleged infringement of the '441 patent.  Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '441 patent.

37.     Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '441 patent.

## SECOND COUNT

### (Declaration of Noninfringement of U.S. Patent No. 9,031,581)

38.     Apple restates and incorporates by reference the allegations in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

39.     Piney Woods claims to own all rights, title, and interest in the '581 patent.  The '581 patent is titled "Apparatus and Method for Obtaining Content on a Cellular Wireless Device Based on Proximity to Other Wireless Devices."  The '581 patent issued on May 12, 2015 from U.S. Patent Application No. 14/536,512, filed on November 7, 2014.  The '581 patent lists

Richard D. Haney as the inventor and X One, Inc. as the initial, sole assignee. A true and correct copy of the '581 patent is attached hereto as Exhibit 2.

40. Piney Woods has accused Apple of infringing claims 7, 12, 21, and 22 of the '581 patent. Apple does not directly or indirectly infringe any claim of the '581 patent, either literally or under the doctrine of equivalents.

41. For example, claim 7 of the '581 patent recites:

An apparatus comprising instructions stored on non-transitory machine readable media, the instructions when executed to cause at least one processor of a cellular wireless device to:

prompt a user of the cellular wireless device, via a user interface of the cellular wireless device, for authorization to establish a relationship with one or more other wireless devices associated with a group code common to said other wireless devices, each other wireless device associated with a respective geolocation; and

responsive to authorization provided by the user, determine, from signals received from one or more of the wireless devices having the common group code, proximity of the cellular wireless device to at least one of the corresponding geolocations,

transmit information to a network destination via a cellular wireless connection, the information to facilitate identification by the network destination of location of the cellular wireless device relative to the geolocations,

receive responsive to identification of the location by the network destination content dependent on the location, and

present the content to the user via a user interface of the cellular wireless device;

wherein the instructions when executed are further to cause the at least one processor to

detect a change in the proximity corresponding to a threshold, and dependent on the change in proximity, repeat the transmission of information via the cellular wireless connection to the network destination, to thereby facilitate determination of updated position by the network destination of the cellular relative to the geolocations, and

receive geospatially-dependent information from the network destination responsive to the updated position.

42.    Apple does not infringe claims 7, 12, 21, and 22 of the '581 patent at least because the Accused Apple Products do not practice the limitations requiring:

- "prompt a user of the cellular wireless device, via a user interface of the cellular wireless device, for authorization to establish a relationship with one or more other wireless devices associated with a group code common to said other wireless devices, each other wireless device associated with a respective geolocation" (claims 7, 12, 21, and 22);

- "determine, from signals received from one or more of the wireless devices having the common group code, proximity of the cellular wireless device to at least one of the corresponding geolocations" (claims 7, 12, 21, and 22);

- "transmit information to a network destination via a cellular wireless connection, the information to facilitate identification by the network destination of location of the cellular wireless device relative to the geolocations" (claims 7, 12, 21, and 22);

- "receive responsive to identification of the location by the network destination content dependent on the location" (claims 7, 12, 21, and 22); and

- "present the content to the user via a user interface of the cellular wireless device" (claims 7, 12, 21, and 22).

For example, the Accused Apple Products do not use a group code to share users' location information.  Instead, Apple products only share a user's location information with another user when the first user elects to share, and location sharing does not involve the acceptance of any request or prompt, or doing so using a group code.  *See, e.g.*, Apple, Share Your Location in Find My on iPhone, iPhone User Guide, https://support.apple.com/guide/iphone/share-your-location-iph01954dc44/26/ios/26 (last visited May 27, 2026) ("In the With field, type the name of a friend you want to share your location with . . . Tap Send and choose how long you want to share your location.").  Further, the Accused Apple Products do not "facilitate identification by the network destination of the location of the cellular wireless device relative to the geolocations," because the Find My network is end-to-end encrypted and a user's location information is unavailable to Apple.  *See, e.g.*, Apple, Location Services Privacy Overview at 3 (Nov. 2019), https://www.apple.com/privacy/docs/Location_Services_White_Paper_Nov_2019.pdf ("security best practices are integrated to protect data, for example using end-to-end encryption so that Apple can't read Significant Locations.").

43.    No third party infringes any claim of the '581 patent by using the Accused Apple Products.  Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  Apple had no knowledge of the '581 patent, nor any knowledge of alleged infringement of the '581 patent by the Accused Apple Products before the patent expired.  For at least the reasons explained above, the Accused Apple Products and the use of the Accused Apple Products do not directly infringe the '581 patent.  The Accused Apple Products are not designed for use in any combination that infringes any claim of the '581 patent.  To the contrary, each has substantial uses that do not infringe any claim of the '581 patent and are not accused by Piney Woods of infringing the '581 Patent.  For example, the Accused Apple Products can be used for phone calls, texts, browsing the Internet, streaming content, tracking health, listening to audio, and more.

44.    Thus, there exists an actual controversy between Apple and Piney Woods with respect to Apple's alleged infringement of the '581 patent.  Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '581 patent.

45.    Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '581 patent.

**THIRD COUNT**

**(Declaration of Noninfringement of U.S. Patent No. 9,185,522)**

46.    Apple restates and incorporates by reference the allegations in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

47.     Piney Woods claims to own all rights, title, and interest in the '522 patent.  The '522 patent is titled "Apparatus and Method to Transmit Content to a Cellular Wireless Device Based on Proximity to Other Wireless Devices."  The '522 patent issued on November 10, 2015 from U.S. Patent Application No. 14/536,487, filed on November 7, 2014.  The '522 patent lists Richard D. Haney as the inventor and X One, Inc. as the initial, sole assignee.  A true and correct copy of the '522 patent is attached hereto as Exhibit 3.

48.    Piney Woods has accused Apple of infringing claims 1, 10-12, 14-17, 20-21, 30-32, and 34-40 of the '522 patent.  Apple does not directly or indirectly infringe any claim of the '522 patent, either literally or under the doctrine of equivalents.

49.    For example, claim 1 of the '522 patent recites:

An apparatus to transmit content to a user of a cellular wireless device, said apparatus comprising instructions stored on non-transitory machine readable media that, when executed, are to cause at least one server to:

access information from server-accessible memory that identifies positions of respective geolocations;

receive, responsive to an authorization by a user of the cellular wireless device, information sufficient to identify position of the cellular wireless device relative to ones of the respective geolocations, where each geolocation of the ones is both within a predetermined proximity relative to the cellular wireless device and also has a group code in common with each other geolocation of the ones, stored in the server-accessible memory, which identifies the geolocation as belonging to a group;

select the content dependent on the position of the cellular wireless device relative to the position of the ones; and

automatically transmit the selected content to the cellular wireless device for display thereon to the user.

50.    Apple does not infringe claims 1, 10-12, 14-17, 20-21, 30-32, and 34-40 of the '522 patent at least because the Accused Apple Products do not practice the limitations requiring:

- "access" or "accessing information from server-accessible memory that identifies positions of respective geolocations" (claims 1 and 21);

- "receive" or "receiving, responsive to an authorization by a user of the cellular wireless device, information sufficient to identify position of the cellular wireless device relative to ones of the respective geolocations, where each geolocation of the ones is both within a predetermined proximity relative to the cellular wireless device and also has a group code in common with each other geolocation of the ones . . . which identifies the geolocation as belonging to a group" (claims 1 and 21); and

- "select the" or "selecting content dependent on the position of the cellular wireless device relative to the position of the ones" (claims 1 and 21).

For example, the Accused Apple Products do not use a group code to share users' location information.  Instead, Apple products only share a user's location information with another user when the first user elects to share, and location sharing does not involve the acceptance of any request or prompt, or doing so using a group code  *See, e.g.*, Apple, Share Your Location in Find My on iPhone, iPhone User Guide, https://support.apple.com/guide/iphone/share-your-location-iph01954dc44/26/ios/26 (last visited May 27, 2026) ("In the With field, type the name of a friend you want to share your location with . . . Tap Send and choose how long you want to share your location.").  Further, the Accused Apple Products do not "select the content dependent" on device or accessory location.  And the Accused Apple Products do not have a "server-accessible memory that identifies positions of respective geolocations" because the Find My network is end-to-end encrypted and a user's location information is unavailable to Apple.  *See, e.g.*, Apple, Location Services Privacy Overview at 3 (Nov. 2019), https://www.apple.com/privacy/docs/Location_Services_White_Paper_Nov_2019.pdf ("security best practices are integrated to protect data, for example using end-to-end encryption so that Apple can't read Significant Locations.").

51.    No third party infringes any claim of the '522 patent by using the Accused Apple Products.  Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  Apple had no knowledge of the '522 patent, nor any knowledge of alleged infringement of the '522 patent by the Accused Apple Products before the patent expired.  For at least the reasons explained above, the Accused Apple Products and the use of the Accused Apple Products do not directly infringe the '522 patent.  The Accused Apple Products are not designed for use in any combination that infringes any claim of the '522 patent.  To the contrary, each has substantial uses that do not infringe any claim of the '522 patent and are not accused by Piney Woods of infringing the '522 patent.  For example, the Accused Apple Products can be used for phone calls, texts, browsing the Internet, streaming content, tracking health, listening to audio, and more.

52. Thus, there exists an actual controversy between Apple and Piney Woods with respect to Apple's alleged infringement of the '522 patent. Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '522 patent.

53. Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '522 patent.

**FOURTH COUNT**

**(Declaration of Noninfringement of U.S. Patent No. 9,253,616)**

54. Apple restates and incorporates by reference the allegations in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

55. Piney Woods claims to own all rights, title, and interest in the '616 patent. The '616 patent is titled "Apparatus and Method for Obtaining Content on a Cellular Wireless Device Based on Proximity." The '616 patent issued on February 2, 2016 from U.S. Patent Application No. 14/667,427, filed on March 24, 2015. The '616 patent lists Richard D. Haney as the inventor and X One, Inc. as the initial, sole assignee. A true and correct copy of the '616 patent is attached hereto as Exhibit 4.

56. Piney Woods has accused Apple of infringing claims 1, 2, 9-10, 14-15, and 20-21 of the '616 patent. Apple does not directly or indirectly infringe any claim of the '616 patent, either literally or under the doctrine of equivalents.

57. For example, claim 1 of the '616 patent recites:

> An apparatus comprising instructions stored on non-transitory machine readable media, the instructions when executed to cause at least one processor of a cellular wireless device to:
>
> prompt a user of the cellular wireless device, via a user interface of the cellular wireless device, for authorization to establish a relationship with one or more other wireless devices associated with a group code common to said other wireless devices, each other wireless device associated with a respective geolocation; and
>
> responsive to authorization provided by the user, determine, from signals received from one or more of the wireless devices having the common group code, proximity of the cellular wireless device to at least one of the corresponding geolocations,

transmit information to a network destination via a cellular wireless connection, the information to facilitate identification by the network destination of location of the cellular wireless device relative to the geolocations,

receive responsive to identification of the location by the network destination content dependent on the location, and

present the content to the user via a user interface of the cellular wireless device;

wherein the instructions when executed are further to cause the at least one processor to

detect a change in the proximity corresponding to a threshold, and dependent on the change in proximity, repeat the transmission of information via the cellular wireless connection to the network destination, to thereby facilitate determination of updated position by the network destination of the cellular relative to the geolocations, and

receive geospatially-dependent information from the network destination responsive to the updated position.

58. Apple does not infringe claims 1, 2, 9-10, 14-15, and 20-21 of the '616 patent at least because the Accused Apple Products do not practice the limitations requiring:

- "prompt a user of the cellular wireless device, via a user interface of the cellular wireless device, for authorization to establish a relationship with one or more other wireless devices associated with a group code common to said other wireless devices, each other wireless device associated with a respective geolocation" (claims 1 and 14);

- "transmit information to a network destination via a cellular wireless connection, the information to facilitate identification by the network destination of location of the cellular wireless device relative to the geolocations" (claims 1 and 14);

- "receive responsive to identification of the location by the network destination content dependent on the location" (claims 1 and 14); and

- "detect a change in the proximity corresponding to a threshold, and dependent on the change in proximity, repeat the transmission of information via the cellular wireless connection to the network destination, to thereby facilitate determination of updated position by the network destination of the cellular relative to the geolocations" (claims 1 and 14).

For example, the Accused Apple Products do not use a "group code" to share users' location information. Instead, Apple products only share a user's location information with another user

when the first user elects to share, and location sharing does not involve the acceptance of any request or prompt, or doing so using a group code. *See, e.g.*, Apple, Share Your Location in Find My on iPhone, iPhone User Guide, https://support.apple.com/guide/iphone/share-your-location-iph01954dc44/26/ios/26 (last visited May 27, 2026) ("In the With field, type the name of a friend you want to share your location with . . . Tap Send and choose how long you want to share your location."). Also, the Accused Apple Products do not "facilitate identification by the network destination of location of the cellular wireless device" because the Find My network is end-to-end encrypted and a user's location information is unavailable to Apple. *See, e.g.*, Apple, Location Services Privacy Overview at 3 (Nov. 2019), https://www.apple.com/privacy/docs/Location_Services_White_Paper_Nov_2019.pdf ("security best practices are integrated to protect data, for example using end-to-end encryption so that Apple can't read Significant Locations.").

59.     No third party infringes any claim of the '616 patent by using the Accused Apple Products. Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. Apple had no knowledge of the '616 patent, nor any knowledge of alleged infringement of the '616 patent by the Accused Apple Products before the patent expired. For at least the reasons explained above, the Accused Apple Products and the use of the Accused Apple Products do not directly infringe the '616 patent. The Accused Apple Products are not designed for use in any combination that infringes any claim of the '616 patent. To the contrary, each has substantial uses that do not infringe any claim of the '616 patent and are not accused by Piney Woods of infringing the '616 patent. For example, the Accused Apple Products can be used for phone calls, texts, browsing the Internet, streaming content, tracking health, listening to audio, and more.

60.     Thus, there exists an actual controversy between Apple and Piney Woods with respect to Apple's alleged infringement of the '616 patent. Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '616 patent.

61.     Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '616 patent.

**FIFTH COUNT**

**(Declaration of Noninfringement of U.S. Patent No. 9,615,204)**

62.    Apple restates and incorporates by reference the allegations in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

63.    Piney Woods claims to own all rights, title, and interest in the '204 patent.  The '204 patent is titled "Techniques for Communication Within Closed Groups of Mobile Devices." The '204 patent issued on April 4, 2017 from U.S. Patent Application No. 14/805,472, filed on July 22, 2015.  The '204 patent lists Richard D. Haney as the inventor and X One, Inc. as the initial, sole assignee.  A true and correct copy of the '204 patent is attached hereto as Exhibit 5.

64.    Piney Woods has accused Apple of infringing claims 1, 2-4, 7-8, 10, 12-14, 17-18, 21-22, and 25 of the '204 patent.  Apple does not directly or indirectly infringe any claim of the '204 Patent, either literally or under the doctrine of equivalents.

65.    For example, claim 1 of the '204 patent recites:

An apparatus comprising instructions stored on non-transitory machine readable media, said instructions when executed to cause at least one processor of a first mobile device to:

cause the first mobile device to interact with a user of the first mobile device using a visual display of the first mobile device to permit the user to define groups, each in a manner associated with one or more other mobile devices;

for each group, transmit a request via at least one server to a software application on each other mobile device associated with the group where such request seeks agreement of a user of the other mobile device, entered via the Software application, to share location of the other mobile device with members of the group;

for a group selected by the user of the first mobile device from the one or more groups, cause the first mobile device to display a map on the visual display of the first mobile device which depicts location of each mobile device associated with the selected group where the user of the mobile device has responded to the request by agreeing to share location; and

cause the first mobile device to

receive requests via the at least one server from the software application on each other mobile device which seek to add the first mobile device to groups defined by users of the other mobile devices and seeks agreement from the user of the first mobile device to share location of the first mobile device with members of the groups defined by the users of the other mobile devices,

display such requests which seek to add the first mobile device to groups defined by the users of the other mobile devices, to the user of the first mobile device, and accept entry by the user of the first mobile device via a user interface of the first mobile device of responses to such requests,

transmit the responses to such requests to the server, and

share GPS position of the first mobile device with members of those groups where the user of the first mobile device has responded to requests by agreeing to share location of the first mobile device with the members of the groups defined by the users of the other mobile devices.

66.     Apple does not infringe claims 1, 2-4, 7-8, 10, 12-14, 17-18, 21-22, and 25 of the '204 patent at least because the Accused Apple Products do not practice the limitations requiring:

- "cause the first mobile device to interact with a user of the first mobile device using a visual display of the first mobile device to permit the user to define groups, each in a manner associated with one or more other mobile devices" (claims 1 and 17);

- "for each group, transmit a request via at least one server to a software application on each other mobile device associated with the group where such request seeks agreement of a user of the other mobile device, entered via the software application, to share location of the other mobile device with members of the group" (claims 1 and 17);

- "for a group selected by the user of the first mobile device from the one or more groups, cause the first mobile device to display a map on the visual display of the first mobile device which depicts location of each mobile device associated with the selected group where the user of the mobile device has responded to the request by agreeing to share location" (claims 1 and 17);

- "receive requests via the at least one server from the software application on each other mobile device which seek to add the first mobile device to groups defined by users of the other mobile devices and seeks agreement from the user of the first mobile device to share location of the first mobile device with members of the groups defined by the users of the other mobile devices" (claims 1 and 17);

- "display such requests which seek to add the first mobile device to groups defined by the users of the other mobile devices, to the user of the first mobile device, and accept entry by the user of the first mobile device via a user interface of the first mobile device of responses to such requests" (claims 1 and 17); and

- "share GPS position of the first mobile device with members of those groups where the user of the first mobile device has responded to requests by agreeing to share location of the first mobile device with the members of the groups defined by the users of the other mobile devices" (claims 1 and 17).

For example, the Accused Apple Products do not permit users to establish groups to share users' location information.  Instead, Apple products only share a user's location information with another user when the first user elects to share, and location sharing does not involve the acceptance of any request or prompt, or doing so using a group.  *See, e.g.*, Apple, Share Your Location in Find My on iPhone, iPhone User Guide, https://support.apple.com/guide/iphone /share-your-location-iph01954dc44/26/ios/26 (last visited May 27, 2026) ("In the With field, type the name of a friend you want to share your location with . . . Tap Send and choose how long you want to share your location.").

67.     No third party infringes any claim of the '204 patent by using the Accused Apple Products.  Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  Apple had no knowledge of the '204 patent, nor any knowledge of alleged infringement of the '204 patent by the Accused Apple Products before the patent expired.  For at least the reasons explained above, the Accused Apple Products and the use of the Accused Apple Products do not directly infringe the '204 patent.  The Accused Apple Products are not designed for use in any combination that infringes any claim of the '204 patent.  To the contrary, each has substantial uses that do not infringe any claim of the '204 patent and are not accused by Piney Woods of infringing the '204 patent.  For example, the Accused Apple Products can be used for phone calls, texts, browsing the Internet, streaming content, tracking health, listening to audio, and more.

68.     Thus, there exists an actual controversy between Apple and Piney Woods with respect to Apple's alleged infringement of the '204 patent.  Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '204 patent.

69.     Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '204 patent.

**SIXTH COUNT**

**(Declaration of Noninfringement of U.S. Patent No. 9,736,618)**

70.     Apple restates and incorporates by reference the allegations in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

71.     Piney Woods claims to own all rights, title, and interest in the '618 Patent.  The '618 patent is titled "Techniques for Sharing Relative Position Between Mobile Devices."  The '618 patent issued on August 15, 2017 from U.S. Patent Application No. 14/801,743, filed on July 16, 2015.  The '618 patent lists Richard D. Haney as the inventor and X One, Inc. as the initial, sole assignee.  A true and correct copy of the '618 patent is attached hereto as Exhibit 6.

72.     Piney Woods has accused Apple of infringing claims 1-8, 10, 12-16, 18-26, 28-29, and 31-36 of the '618 patent.  Apple does not directly or indirectly infringe any claim of the '618 Patent, either literally or under the doctrine of equivalents.

73.     For example, claim 1 of the '618 patent recites:

An apparatus comprising instructions stored on non-transitory storage media to cause a first mobile device to establish an ad hoc communication session with a second mobile device, said instructions when executed to cause the at least one hardware processor of the first mobile device to:

interact with a user of the first mobile device using a visual display device of the first mobile device to obtain a destination of the first mobile device;

obtain GPS position and direction of travel of the first mobile device from hardware elements on the first mobile device;

interact with the user using the visual display device to receive user identification of the second mobile device and, responsive to such identification, cause the first mobile device to send a request for the ad hoc communication session with the second mobile device;

subject to acceptance of the ad hoc communication session by the second mobile device, transmit information representing the GPS

position and direction of travel of the first mobile device and representing the destination to the second mobile device;

receive input from the user representing timing of transmission of one or more updates to the information; and

apply the input received from the user, to time the provision of the one or more to the information to the second mobile device.

74.    Apple does not infringe claims 1-8, 10, 12-16, 18-26, 28-29, and 31-36 of the '618 patent at least because the Accused Apple Products do not practice the limitations requiring:

- "An apparatus comprising instructions stored on non-transitory storage media to cause a first mobile device to establish an ad hoc communication session with a second mobile device…" (claims 1 and 18);

- "interact" or "interacting with the user using the visual display device to receive user identification of the second mobile device and, responsive to such identification, cause the first mobile device to send a request for the ad hoc communication session with the second mobile device" (claims 1, 18, 19, and 36);

- "subject to acceptance of the ad hoc communication session by the second mobile device, transmit" or "transmitting information representing the GPS position and direction of travel of the first mobile device and representing the destination to the second mobile device" (claims 1, 18, 19, and 36);

- "receive" or "receiving input from the user representing timing of transmission of one or more updates to the information" (claims 1, 18, 19, and 36); and

- "A method of operation of a first mobile device, for establishing an ad hoc communication session …" (claims 19 and 36).

For example, the Accused Apple Products do not establish an ad hoc communication session to share users' location information.  The Accused Apple Products also do not transmit position data "subject to acceptance" of an ad hoc communication session, but instead share a user's location information with another user when the first user elects to share.  Location sharing in the Accused Apple Products does not involve the acceptance of any request or prompt.  *See, e.g.,* Apple, Share Your Location in Find My on iPhone, iPhone User Guide, https://support.apple.com/guide/iphone /share-your-location-iph01954dc44 /26/ios/26 (last visited May 27, 2026) ("In the With field, type the name of a friend you want to share your location with . . . Tap Send and choose how long you want to share your location.").  Further, the Accused Apple Products do not receive user input representing update transmission timing.

75. No third party infringes any claim of the '618 patent by using the Accused Apple Products. Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. Apple had no knowledge of the '618 patent, nor any knowledge of alleged infringement of the '618 patent by the Accused Apple Products before the patent expired. For at least the reasons explained above, the Accused Apple Products and the use of the Accused Apple Products do not directly infringe the '618 patent. The Accused Apple Products are not designed for use in any combination that infringes any claim of the '618 patent. To the contrary, each has substantial uses that do not infringe any claim of the '618 patent and are not accused by Piney Woods of infringing the '618 patent. For example, the Accused Apple Products can be used for phone calls, texts, browsing the Internet, streaming content, tracking health, listening to audio, and more.

76. Thus, there exists an actual controversy between Apple and Piney Woods with respect to Apple's alleged infringement of the '618 patent. Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '618 patent.

77. Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '618 patent.

### PRAYER FOR RELIEF

WHEREFORE, Apple requests that judgment be entered:

A. Declaring that judgment be entered in favor of Apple and against Piney Woods on Apple's claims;

B. Declaring that Apple does not infringe, directly or indirectly, the Patents-in-Suit, either literally or under the doctrine of equivalents;

C. Declaring that Apple does not induce infringement of the Patents-in-Suit;

D. Declaring that Apple does not contribute to infringement of the Patents-in-Suit;

E. Finding that this is an exceptional case under 35 U.S.C. § 285;

F. Awarding Apple its costs and attorneys' fees in connection with this action;

G. Awarding Apple such further and additional relief as the Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Apple respectfully demands a trial by jury on all issues triable by jury.


Date: June 1, 2026

*/s/ Mark D. Selwyn*
Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Tel.: (650) 858-6000
Fax: (650) 858-6100

Joseph J. Mueller (*pro hac vice* forthcoming)
Andrew J. Danford (*pro hac vice* forthcoming)
joseph.mueller@wilmerhale.com
andrew.danford@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel: (617) 526-6000
Fax: (617) 526-5000


*Attorneys for Plaintiff Apple Inc.*